**FRANK CASILIO & SONS, INC., Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

**EASTERN INDUSTRIES, INC., Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

**Robert D. KNAUSS, Gary L. Lipics and Dennis R. Keiser, (Representative Claimants), Petitioners,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 14, 1995.

Decided Nov. 20, 1995.

**508**

Edward H. Feege, for petitioner Frank Casilio and Sons, Inc.

John K. Baker, for petitioner Eastern Industries, Inc. and intervenor Rock Hill Materials, Co., Inc.

William T. Josem, for petitioners Knauss, Lipics and Keiser and intervenors Senick, Schultz, Barrall and Ravitsky, and intervenors Sweigart and Martrich, Sr.

James K. Bradley, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before McGINLEY and FRIEDMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

These appeals of three separate decisions of the Unemployment Compensation Board of Review (Board) raise the common issue of whether the out-of-work benefits (OWB) paid to Teamster Union Local 773 (Union) members during a work stoppage against three ready-mix concrete contractors should be deducted from their unemployment compensation benefits. In two of its decisions, the Board found that the OWB should not be deducted. In one of the cases, the Board deducted the OWB from the members' unemployment compensation benefits. Although these cases were never consolidated, we choose to write only one opinion due to the identical issue presented by each case. We reverse the two decisions in which the Board concluded that the OWB were not remuneration and affirm the decision where the Board concluded that the OWB were remuneration for services performed.

## Issue

The sole issued raised by each of these three appeals is whether the Union's payments of out-of-work benefits in the amount of $200.00 a week to union members for picketing during a work stoppage constitute remuneration for services performed and require deduction from the members' unemployment compensation benefits pursuant to Section 404(d) of the Unemployment Compensation Law (Law).[1]

## Facts

The facts in each of the three cases are substantially the same. On May 8, 1993, the union members engaged in a work stoppage against three ready-mix concrete contractors: Frank Casilio & Sons, Inc., Rock Hill Material Company and Eastern Industries, Inc. (Employers). The work stoppage followed the expiration of the collective bargaining agreements between the Union and the three Employers. The Union was the collective bargaining agent for the union members employed by all three Employers and negotiated identical contracts between its members and the three Employers.

During the work stoppage, the union members received OWB from the Union in the amount of $200.00 a week. One week each month, the Union deducted the union members' monthly dues from the OWB and the members received $173.00. The union members also received unemployment compensation benefits during the work stoppage. The issue of whether the members are entitled to unemployment compensation is not before us.

Employers contended that the union members' unemployment compensation benefits should be offset by the amount of the OWB pursuant to Section 404(d) because the members were receiving remuneration for services performed, i.e. picketing. Three separate hearings were held and three separate decisions were made and appealed to the Board.

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 804(d).

In the case docketed before us at No. 988 C.D. 1994, *Frank Casilio & Sons, Inc. v. Unemployment Compensation Board of Review,* the Board found that strike captains ran the day-to-day activities on the picket line with each union member's duties changing from day-to-day; that the union members were informed verbally of their duties and that defiance of the Union's authority would have consequences including the loss of OWB. The Board further found that union members received the same $200.00 a week regardless of how many days a week they picketed, members were not required to picket a certain number of days a week in order to receive benefits and members performed less than the "required" picket duty and still received $200.00 a week. The Board applied *Burk v. Unemployment Compensation Board of Review,* 119 Pa.Cmwlth. 360, 547 A.2d 497 (1988), *petition for allowance of appeal denied,* 522 Pa. 585, 559 A.2d 528 (1989), which stands for the proposition that OWB are not deductible from unemployment compensation if they are not contingent upon the performance of active picketing duty. In applying *Burk,* the Board concluded that the payment of OWB to the union members was not conditioned on the union members performing services but instead was compensation paid because of their continued membership in the Union. Therefore, the Board concluded that the OWB were not deductible.

In the case docketed before us at No. 2175 C.D.1994, *Eastern Industries, Inc. v. Unemployment Compensation Board of Review,* the Board found that defiance of the Union's authority could result in consequences such as loss of OWB; that strike captains did not receive any more than $200.00 a week; that union members were expected to aid and support the strike but were not required to picket every day; that members did not have to picket for a certain number of days in order to receive OWB; and, that members who went on vacation could still receive OWB. Based on these findings, the Board concluded that there was no requirement for the performance of services in order to re-

ceive OWB and no specific conditions were imposed on union members by the Union. Based on *Burk,* the Board concluded that the OWB were not remuneration for services performed and were not deductible from unemployment benefits.

In the case docketed before us at No. 1783 C.D.1994, *Robert D. Knauss, et al. v. Unemployment Compensation Board of Review,* the Board found that some union members received OWB; that union members will not receive OWB unless the Union has held them to be eligible; that the Secretary/Treasurer of the Local has the authority to terminate OWB; that union members were assigned picketing duties; and, that the union members signed in every day that they picketed. The Board further found that union members would have to explain in advance if they were not going to picket; that members did not receive OWB for vacation time unless they got their vacation approved in advance; that picket captains were instructed to report to the Union if members did not appear to picket for a week; that members had to picket during the course of a week in order to receive OWB that week; and, that if members did not actively participate in the work stoppage they were not eligible for OWB.

█ The Board found that the witnesses clearly testified that, in order to receive OWB during the weeks at issue, the union members had to picket on the picket line at some time during the week. The Board concluded that the OWB were remuneration for picketing which must be deducted from the union members unemployment benefits.[2]

### Discussion

█ The Board argues that it reached different results in these cases because of the different record presented by each case. We disagree that the minor differences in the testimony presented in each of the three cases requires a different result when the facts are so substantially similar in each case. The local Union is the same entity in all

---

**2.** Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the findings of fact are supported by substantial evidence. *Dingbat's v. Unemployment Compensation Board of Review,* 123 Pa. Cmwlth. 73, 552 A.2d 1157 (1989).

three cases. Either it paid its union members for picketing or it did not. It obviously did not differentiate among the different Employers' employees.

Section 404(d)(1) of the Law provides, in pertinent part, as follows:

(d)(1) Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to July 1, 1980 *shall be paid, with respect to such week, compensation in an amount equal to his weekly benefits rate less the total of (i) the remuneration, if any, paid or payable to him with respect to such week for his services performed which is in excess of his partial benefit credit....*

43 P.S. § 804(d)(1) (emphasis added).

In *Burk,* we held that if "strike benefits were not conditioned upon the performing of picket line duty," they are not deductible from compensation benefits. *Id.,* 547 A.2d at 502. All parties agree that the OWB are deductible from the union members' unemployment compensation benefits if they are contingent upon the members performing picket line duties.

Employers argue that the uncontested evidence, composed of testimony by the claimants and Union representatives, proved that the OWB were conditioned upon the performance of picket line duty to an extent satisfactory to the Union. We agree. Brad Yeakel, the Secretary/Treasurer of Local 773, testified at each of the three hearings. It is our opinion that Mr. Yeakel's testimony clearly indicates that the OWB were remuneration for performing picket line duty.

In the hearing before Referee James Norris, in the case involving Employer Frank Casilio and Sons, Inc., where OWB were not deducted, Mr. Yeakel testified that he and the strike captain, Donald Strauss, would discuss the participation of the various employees in the strike, such as their assigned responsibilities and their performance. (R.R. at 103a.) Counsel asked Mr. Yeakel about the union members' understanding as to what would happen if they did not follow the instructions that were given to them by him or Mr. Strauss. Mr. Yeakel answered as follows:

CU [3] Well, there are a number of potential consequences of any union member who defies the authority of the union in whatever manner. One of those consequences could be the termination of benefits. If that's what you're driving at. There could be other potential consequences, including internal actions. They were all apprised of that, you know, at the beginning of the strike and at various times throughout the strike.

EL [4] Is it fair to say that their understanding was that if they didn't follow the union's instructions concerning picketing or any strike-related activity, that they could lose their out-of-work benefits?

CU Sure, that's correct.

EL So, the employees understood that they received an [sic] out-of-work benefits was [sic] contingent upon picketing, for instance, or following whatever the union's instructions were?

CU Whatever the union's instructions were, yes, as to picketing, that's correct.

(R.R. at 104a.)

When asked what the consequences would be to a union member who was told to picket six days and, he "stayed home and watched Oprah instead", Mr. Yeakel replied that the Union would probably warn him before terminating strike benefits but that, at some point in time, the Union's only recourse would be the termination of OWB or, possibly, expulsion from the Union. (R.R. at 106a.) Mr. Yeakel also testified regarding a union member who worked for one of the *other* employers and whose OWB had been terminated because of a long pattern of not showing up on the picket line. (R.R. at 107a.)

In addition, Mr. Yeakel testified at the hearing before Referee Harold Geld in the case involving Eastern Industries, where OWB were not deducted. Mr. Yeakel testified that the Union requires the union mem-

---

**3.** "CU" refers to Mr. Yeakel, Claimants' union representative.

**4.** "EL" refers to Employer's attorney Mr. Jeffrey Zimskind.

bers to sign sign-in sheets in order to be eligible for the OWB. Mr. Yeakel testified that, by signing the sign-in sheet, the union members indicate that they are participating strikers. Mr. Yeakel defined participating strikers as those members who "have their dues in good standing. They have to be employed by Eastern Industries, and part of the not crossing the picket line and actively supporting the strike." (R.R. at 584–85a.) According to Mr. Yeakel, "actively supporting the strike" means "[p]icketing activities, attending meetings, continuing to pay the dues, and just lending aide [sic] and support to the overall effort." (R.R. at 585a.)

Mr. Yeakel was asked if having strike benefits terminated was a potential consequence for an individual who was not attending picketing activities. He replied that it could be one of the potential consequences. (R.R. at 587a.) Mr. Yeakel further testified that if a union member "simply refuses to participate or fails to for a significant length of time, I would recommend the termination of those strike benefits." (R.R. at 587–88a.)

Mr. Yeakel also testified before Referee William Kennedy in the case involving Rock Hill Materials, where OWB were deducted. Mr. Yeakel testified that, other than picketing, none of the union members were expected to do anything else in regards to receiving strike benefits. (R.R. at 356–57a.)

The cumulative testimony of Mr. Yeakel in all three cases indicates that, even though the union members were not required to picket a certain number of days a week, they were required to picket to the satisfaction of the Union in order to be eligible for OWB. Individual union members also testified at the three hearings.

At the hearing before Referee Norris involving Frank Casilio and Sons, Inc., Darryl Barrall, an employee of Frank Casilio and Sons, testified that after he missed a few days of picketing he was approached by the strike captain, Mr. Strauss, who asked him why he had not been on the picket line. Mr. Barrall testified that it was his understanding that an insufficient answer could result in the cessation of his OWB. (R.R. at 110a.) Mr. Barrall testified that, in his opinion, staying home and watching Oprah was not good

enough to get strike benefits. (R.R. at 111a.) Paul Senick also testified at that hearing. He stated that he thought he had to picket before he got his OWB. (R.R. at 117a.)

Raymond Miller, an employee of Eastern Industries, testified before Referee Geld. He testified that he was told he "had to be there" in order to get strike benefits. (R.R. at 614a.) He further testified that he was aware that his OWB could be terminated as a consequence of not showing up to picket. (R.R. at 615a.) Chris Pierog, another employee of Eastern Industries, testified that "you had to strike to get strike paid benefit" and that picketing was required. (R.R. at 637a.)

Scott Ruch, an employe of Rock Hill Materials, testified before Referee Kennedy. He testified that he did not receive OWB for the week he was on vacation. (R.R. at 360a.) He further testified that if you did not show up to picket "you obviously wouldn't get paid because I didn't." (R.R. at 361a.) Paul Strohl, who was also employed by Rock Hill Materials at the time of the work stoppage, also testified before Referee Kennedy. He stated that he "knew if he didn't picket [he] wasn't going to get any money." (R.R. at 371a.)

Based on the above testimony, it is clear that the union members understood that payment of OWB was contingent upon their participation in the picketing. Mr. Yeakel's testimony indicates that it is the Union's position that payment of OWB was contingent upon the union members doing their share of the picketing. Based on this testimony, it is clear to us that the OWB were remuneration for services performed by the union members, i.e. picketing. Under *Burk*, the OWB must be deducted from the union members' unemployment compensation benefits.

 Although we do not dispute the facts as found by the Board in these cases, in the face of this overwhelming uncontradicted evidence, we must conclude that the Board erred as a matter of law in determining that the facts supported a conclusion that the OWB were not remuneration for services rendered in the cases involving Frank Casilio

and Sons, Inc. and Eastern Industries.[5] This is especially true in light of the Board's findings in those cases that the failure to obey the Union's instructions could result in loss of OWB.[6] The Board's conclusion that the OWB were not remuneration is inconsistent with these findings. If the OWB could be terminated for failure to obey the Union's instructions to picket, then the receipt of OWB must be contingent upon the union members picketing to the Union's satisfaction. Therefore, it is remuneration for services performed and the Board erred as a matter of law in concluding that it was not. Further, the Board was correct in determining that the OWB should be deducted from the union members' unemployment benefits in the case involving Rock Hill Materials.

## Conclusion

Therefore, for the reasons stated above, we reverse the order of the Board at No. 988 C.D.1994 and No. 2175 C.D.1994 and affirm the order of the Board at No. 1783 C.D.1994 and determine that the Union's out-of-work benefits in each case should be deducted from the union members' unemployment compensation benefits.

### ORDER

No. 988 C.D.1994

**AND NOW,** this 20th day of November, 1995, the order of the Unemployment Compensation Board of Review dated March 22, 1994 at No. B–323482 is hereby reversed.

### ORDER

No. 2175 C.D.1994

**AND NOW,** this 20th day of November, 1995, the orders of the Unemployment Com-

pensation Board of Review dated August 3, 1994 at No. B–327772 and B–327773 are hereby reversed.

### ORDER

No. 1783 C.D.1994

**AND NOW,** this 20th day of November, 1995, the orders of the Unemployment Compensation Board of Review dated June 22, 1994 at Nos. B–326517, B–326518 and B–326519 are hereby affirmed.

FRIEDMAN, Judge, dissenting.

Claimants here are union members who collected $200.00 a week in out of work benefits (OWB) from their union for picketing during a work stoppage. We are asked to decide whether these OWB should be offset against the unemployment compensation benefits which Claimants also received during the work stoppage. The Majority concludes that such deduction is proper under section 404(d) of the Unemployment Compensation Law (Law),[1] because these OWB amounts were remuneration for services performed. Because I disagree with this characterization, I respectfully dissent.

I understand that the OWB were contingent upon Claimants showing support for the union's work stoppage, and I do not disagree that when required to do some act, i.e., picketing, in order to collect OWB, defiance of union authority could result in the loss of OWB for union members. However, I do not believe that this necessarily identifies OWB as "remuneration for services performed" for purposes of the Law.

> Members of the union were informed verbally of their duties and, should they disobey or defy the authority of the union, there were consequences including the loss of OWB.
> (Finding of Fact No. 13.)

---

**5.** A reviewing court is free to draw its own inferences and conclusions from the facts established. *Minteer v. Wolfe*, 300 Pa.Superior Ct. 234, 446 A.2d 316 (1982).

**6.** In Frank Casilio and Sons, Inc., the Board made the following finding of fact:
Members of the Union were informed verbally of their duties and, should they defy the authority of the Union, there were consequences including loss of OWB.
(Finding of Fact No. 14.)
In Eastern Industries, the Board made the following finding of fact:

**1.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 804(d), which provides that weekly unemployment compensation shall be paid to eligible employees in an amount equal to the weekly benefit rate less any remuneration paid or payable with respect to that week for services performed.

Remunerate is defined as "to pay *an equivalent to* for a service, loss, or expense." Webster's New Collegiate Dictionary 971 (1981). (Emphasis added.) Thus, notwithstanding the fact that OWB can be denied if union members fail to picket, I do not feel that such payments should be deducted from unemployment benefits where the payments received bear no relation to the amount or type of services performed. *See Georgia–Pacific Corp. v. Unemployment Compensation Board of Review,* 157 Pa.Cmwlth. 651, 630 A.2d 948 (1993), at 959. Instead, I would classify Claimants' picketing as a union activity, the performance of which entitles union members to collect $200.00 a week as a union benefit, no matter how much they are asked to do or whether they are asked to do anything at all. It is clear from the record that OWB are not payments *equivalent to,* or even related to, services performed.[2] Absent are the traditional concepts of compensation owed for work provided, such as those based on the quantity or quality of work produced, the number of hours spent on the job, or the expertise involved in doing a particular job. Instead, the union pays all eligible members a flat amount weekly; an amount unrelated to the role a member assumes or how much or little picketing he actually does.

In applying *Burk v. Unemployment Compensation Board of Review,* 119 Pa.Cmwlth. 360, 547 A.2d 497 (1988), *petition for allowance of appeal denied,* 522 Pa. 585, 559 A.2d 528 (1989), to conclude that OWB are not deductible from unemployment compensation, the Board reasoned that the payment of OWB was not conditioned on the union members performing services but instead was compensation paid because of their continued membership in the union. I would agree with this analysis. The way in which the union dispensed OWB to its members; that is, providing a set weekly amount to members without reference to the amount of time those members spent picketing, clearly reflects that the union did not intend OWB to remunerate union members for services performed. Rather the union extends OWB as a benefit to union members stemming from their union membership, in order to compensate them for their union allegiance and support. As such, I do not believe that OWB fall within the purview of section 404(d) of the Law and, thus, they should not be deducted from union members' unemployment compensation benefits.

---

**2.** This is easily illustrated by reference to the fact section of the Majority opinion. As the Majority noted, in *Frank Casilio & Sons, Inc. v. Unemployment Compensation Board of Review,* docketed at No. 988 C.D.1994, the Board found that each union member's picketing duties changed daily, yet Claimants received the same $200.00 a week no matter how often or how seldom they picketed. In fact, even if they performed less than the picket duty assigned during a particular week, union members still collected $200.00. Similarly, in *Eastern Industries, Inc. v. Unemployment Board of Review,* docketed at No. 2175 C.D.1994, the Board found that strike captains received an identical amount for performing their services as any other union member. The Board also found that union members were not required to picket for any minimum period to collect OWB, and would receive the same $200.00 whether they picketed every day or not at all, as long as they supported the strike. In *Robert D. Knauss, et al. v. Unemployment Compensation Board of Review,* docketed at No. 1783 C.D.1994, OWB were more closely aligned with the performance of picketing duties; however, even there, although receipt of OWB was contingent on a member's doing *some* picketing during a given week, the $200.00 amount remained constant despite the number of days a member spent on the picket line.